UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEDTRICA SOLUTIONS LTD., <br><br> Plaintiff, <br><br> v. <br><br> CYGNUS MEDICAL LLC, a Connecticut limited liability company, <br><br> Defendant. | Case No. C12-538RSL <br><br> ORDER CONSTRUING CLAIMS |

Defendant Cygnus Medical LLC ("Cygnus") is the owner of United States Patent No. 7,648,023 ("the patent" or "the '023 patent") which relates to a cleaning kit for an endoscope that can be used immediately after a procedure to clear debris from the channel and insertion tube of the endoscope before a more thorough cleaning is conducted. Cygnus claims that Plaintiff Medtrica Solutions Ltd. and third-party defendant STERIS Corp. (collectively "Medtrica") infringed and continue to infringe the '023 patent. The parties disagree about the interpretation of five terms used in the claims of the patent.

The claims of the patent define the invention and the scope of the patentee's right to exclude. Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008). The Supreme Court has determined that the proper construction of the asserted patent claims must be decided by the Court as a matter of law. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384-91 (1996). If a term must be construed, the Court

ORDER CONSTRUING CLAIMS - 1

focuses on how a person of ordinary skill in the art at the time the patent application was filed would have understood the terms in light of the entire patent. Phillips v. AWH Corp., 415 F.3d 1303, 1321, 1323 (Fed. Cir. 2005).

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention -- the inventor's lexicography -- must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution history.

Id. at 1313 (quoting Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

The Phillips decision sets out a framework for claim construction that synthesizes prior law while rejecting the earlier tendency to over-emphasize extrinsic evidence. The claims themselves, rather than dictionaries, encyclopedias, and treatises, provide a context for the contested terms and comparisons against which to measure the scope of the various claims. Id. at 1314-15. Unless the meaning of the claim language is "readily apparent even to lay judges," id. at 1314, the court should "rely heavily" on the patentee's written description of the invention, id. at 1317, giving the claims "their broadest reasonable construction 'in light of the specification as it would be interpreted by one of ordinary skill in the art,'" id. at 1316 (quoting In re Am. Acad. of Sci. Tech. Ctr., 367 F.3d 1359, 1364 (Fed. Cir. 2004))). Other evidence of how the patentee and the United States Patent and Trademark Office ("USPTO")understood the claims contained in the prosecution history can also inform the meaning of the claim language, although the Federal Circuit warns that this resource sometimes lacks the clarity of the patent itself. Id. at 1317.

ORDER CONSTRUING CLAIMS - 2

When interpreting claim terms, district courts may also "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Id. (quoting Markman, 52 F.3d at 980). Such evidence is especially useful for helping the court understand the underlying technology, explaining how an invention works, and establishing the way in which one skilled in the art would use the claim terms. Id. at 1318. Courts should not, however, put too much emphasis on extrinsic evidence as the starting point for construing claim terms because such evidence "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1319. The claim construction methodology set forth in Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002), which encouraged district courts to rely on dictionary definitions when ascertaining the ordinary meaning of particular claim terms, with recourse to the specification serving only as a check on the dictionary definition, was rejected.

> The main problem with elevating the dictionary to such prominence is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent. Properly viewed, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.

Id. at 1321.

Having reviewed the memoranda and exhibits submitted by the parties and having heard the arguments of counsel on June 20, 2013, the Court finds as follows:[1]

---

[1] Because Medtrica was given an opportunity to respond and did respond to Cygnus's proposed construction of the term "weakened line," the Court, in its discretion, DENIES Medtrica's motion to strike Cygnus's proposed construction and opening claim construction brief (Dkt. # 99 at 2-4).

ORDER CONSTRUING CLAIMS - 3

**Claim 1 of the '023 Patent**

Many of the disputed terms are used throughout the patent in various forms: "weakened line," for example, also appears as "weakness line" and "line of weakness." Because any construction ascribed to the disputed terms will have equal effect throughout the various claims at issue, the Court starts with claim 1 of the '023 patent, reproduced here with four of the disputed terms in italics:

1. An endoscope pre-cleaning kit comprising:

    a sealed, flexible pouch comprising front and back sidewall panels and a bottom gusset panel, the sidewall panels being superimposed over one another and sealed together proximate to their top and side peripheral edges to define a top seal and two opposing side seals, the sidewall panels being sealed to the bottom gusset panel proximate to bottom peripheral edges of the sidewall panels to define a gusseted bottom portion such that said pouch is adapted to stand upright;

    a pre-diluted detergent contained within said pouch; and

    an absorbent pad *adapted to absorb* a portion of said detergent, said absorbent pad is disposed within said pouch or said absorbent pad is attached to an outside of said pouch;

    wherein said pouch includes a portion adapted to be opened in order to access said detergent;

    wherein the portion adapted to be opened comprises at least one *weakened line in the front and back sidewall panels*; and

    wherein the pouch is *capable of standing upright* before it is opened to access said detergent.

**1. "Weakened Line"**

The parties agree that the term "weakened line" is in dispute. Dkt. # 92 at 2. Cygnus contends that "weakened line" should be afforded its plain and ordinary meaning, which it asserts is "a line that creates a weakness to ease opening of the pouch - it simply allows the top portion to be opened so that a user can easily access the liquid detergent." Dkt. # 94 at 6.

Cygnus's proposed construction, however, is at odds with the claim construction mandated by the claims themselves and the prosecution history. This proposed construction would remove the word "weakened" from its proper context describing the word "line" and create the presence of a general "weakness" even though this undefined weakness is not supported by the claims. Compare '023 patent, col.7, l.14, and Dkt. # 94 at 6. The patentee's choice to use an adjective suggests that it was intended to alter the common meaning of the word "line" rather than stand alone as an independent noun. See Wilson Sporting Goods Co. v. Hillerich Bradsby Co., 442 F.3d 1322, 1328 (Fed. Cir. 2006) ("the modifiers to "gap," such as "annular," produce significant differences in the geometries in each defining claim."). The context of the words implies that not all lines are weakened, Phillips, 415 F.3d at 1314, and the pouch that is the subject of the patent has at least one line less strong than the surrounding material. The customary meaning of "weakened," construed within its proper context, implies that "weakened" modifies the line, not an area of the pouch separate from the line as suggested by Cygnus. Even though the specification uses the word "weakness" in addition to the word "weakened," the context of "weakness" confirms that it too describes the line, and was not intended to stand alone as an independent noun. '023 patent, col. 5, ll. 57-67 ("line of weakness" and "weakness line"). The line does not create weakness. The line itself is weakened.

In addition, the word "in" following "weakened line" implies a physical relationship between the line and the front and back sidewall panels. '023 patent, col. 7,

ORDER CONSTRUING CLAIMS - 5

ll. 14-15. This context suggests that the line is not just hypothetical, but physically noticeable to the user. The prosecution history supports this interpretation. In Response to an Official Action by the USPTO, Cygnus added "at least one weakened line" to claim 1 of the '023 patent. Dkt. # 96-6 at 3. In its response to the USPTO's rejection for obviousness, Cygnus explained that "the at least one weakened line" "is an important aspect of the present invention because it provides a user with a quick and convenient access [to] the detergent in order to clean the endoscope." Id. at 11-12. To fulfill its intended purpose, the line must be easily identifiable to the user. Thus, Cygnus limited its invention to a pouch with a visible "weakened line." Id.

Cygnus appears to suggests that the disputed term is a means-plus-function limitation under 35 U.S.C. § 112(f). Dkt. # 101 at 4. If the term is a means-plus-function limitation, "the claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. 35 U.S.C. § 112(f). Dkt. # 101 at 4. Cygnus's proposed interpretation, again, is inconsistent with the actual language of the claim. The term, considered in context, describes a physical structure for the front and back sidewall panels. Therefore, the Court finds that means-plus-function claiming does not apply. See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc., 711 F.3d 1348, 1364 (Fed. Cir. 2013) (where a claim term does not use the word "means" and the claim limitation recites sufficient structure, means-plus-function claiming does not apply). The Court therefore declines to adopt Cygnus's proposed construction of "weakened line."

Having declined to adopt Cygnus's proposed construction of "weakened line," the Court now turns to Medtrica's proposed construction. Medtrica argues that "weakened line" should be construed to mean "at least one long, thin area or mark, on each of the front and back sidewall panels, that is discernibly less strong than the remainder of the sidewall panels." Dkt. # 95 at 7.

ORDER CONSTRUING CLAIMS - 6

1
2
3
4
5
6
7
8

Cygnus argues that Medtrica relies too heavily on one embodiment in which the "weakened line" may be created by perforating or scoring the sidewall panels. Dkt. # 95 at 12-13 (citing '023 patent, col. 5, ll. 54-63). Cygnus contends that Medtrica seeks to limit the scope inappropriately based on a single embodiment. Dkt. # 101 at 3-4. Rather, Cygnus argues, the term should not be construed to prohibit another embodiment in which "[o]ne or both ends of the weakness line preferably terminates with a notch (not shown), which provides a stress concentration and aids in starting a tear along weakness line when pouch is opened by a consumer." Dkt. # 101 at 3-4.

9
10
11
12
13
14
15
16

The Court finds that construing the term to include the physical nature of the term does not improperly impose any limitations based on a particular embodiment. While the specification implies that the weakened line may be formed by perforating or scoring the sidewalls and end with a notch, '023 patent, col. 5, ll. 54-67, the weakened line may still terminate in one or more notches. The preferred embodiment may have at least one notch, but the specification and the claims make clear that unlike the "weakened line," a notch is not required. The claims themselves provide the structural nature of the "weakened line" and Cygnus confirmed that the "weakened line" is a requirement of the invention when it responded to the USPTO's action.

17
18
19
20
21
22
23
24
25

Although Medtrica's construction does not improperly limit the claim based on a single embodiment as Cygnus contends, it does provide limitations not supported by the language of the claims or the specification. Medtrica's construction improperly inserts "long" and "thin," two adjectives that are not suggested by the specification. Medtrica fails to explain why it chose to include these words in its construction and the Court declines to limit the claim using those words. The Court also finds that Medtrica's proposed construction attempts to re-write more of the claim than the disputed term. Dkt. # 95 at 10 ("<u>at least one</u> long, thin area or mark, on each of <u>the front and back sidewall panels</u>, that is discernibly less strong than the remainder of the sidewall

26
ORDER CONSTRUING CLAIMS - 7

panels.") (emphasis added).  The proposed construction would make the claim redundant without improving its clarity.

The patent documents are unambiguous and thus, "weakened line" may be construed based on the intrinsic evidence alone.  Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1212.  The Court construes the term "weakened line" to mean "a physical, identifiable segment of material that is less strong than the surrounding material.

### 2.  "Adapted To Absorb"

The parties disagree whether the Court should construe the term "adapted to absorb."  Medtrica argues that the term should be construed as "capable of absorbing, but not necessarily containing detergent."  Dkt. # 95 at 21.  Medtrica relies on part of the claim that states a pad may be included inside the pouch or attached to the outside of the pouch for its proposition that the pad need not actually contain detergent.  Dkt. # 95 at 22.  That claim language, however, describes the placement of the pad in relation to the pouch, not the composition of the pad.  '023 patent, col. 7, ll. 7-10.  The Court will not impose a limitation regarding the characteristics of the pad where the claims themselves do not support that limitation.  The Court construes "adapted to absorb" as "capable of absorbing."

### 3.  "In The Front and Back Sidewall Panels"

Medtrica argues that "in the front and back sidewall panels" should be construed as "in both the front and back sidewall panels, but not in the side seals."  Dkt. # 95 at 19-21.  Cygnus contends that the term should be given its plain and ordinary meaning and no further construction is necessary.  Dkt. # 101 at 6.  The Court will not incorporate into the term limitations regarding side seals.  The word "both" is unnecessary as the term already implies that the weakened line must be on both sidewall panels.  The disputed term is not technical or ambiguous.  Thus, the Court agrees with Cygnus that "in the front and back sidewall panels" does not need to be construed.

ORDER CONSTRUING CLAIMS - 8

### 4. "Capable of Standing Upright"

Like the previous term, the parties disagree about whether this claim needs to be construed. Dkt. # 95 at 3; Dkt. # 101 at 6. Medtrica seeks to construe this term by adding words that describe the method by which the pouch stands upright. Medtrica proposes that "capable of standing upright" means "able to stand upright with or without external force." Dkt. # 95 at 23. However, neither the claims nor the specification disclose how the pouch stands. At most, the intrinsic evidence describes a preferred embodiment in which the bottom gusset panel is attached sidewalls in a way that "allows the pouch to stand upright without being supported." '023 patent, col. 4, ll. 57-63. "With or without external force" does not clarify the claims. Furthermore, this term is not highly technical in nature or vague. Further construction would not help the jury. Thus, the Court finds that "capable of standing upright" does not need to be construed.

**Claim 10 of the '023 patent**

> 10. An endoscope pre-cleaning kit comprising:
>
> > a sealed, flexible pouch comprising front and back sidewall panels superimposed over one another and sealed together proximate to at least top and side peripheral edges of the front and back sidewall panels to define a top seal and two opposing side seals, said pouch being adapted to stand upright;
> >
> > a pre-diluted detergent contained within said pouch; and
> >
> > an absorbent pad adapted to absorb a portion of said detergent, said absorbent pad is disposed within said pouch or said absorbent pad is attached to an outside of said pouch;
> >
> > wherein said pouch includes at least one weakened line in the front and back sidewall panels *adapted to allow access* to said detergent; and
> >
> > wherein the pouch is capable of standing upright before it is opened to access said detergent.

The parties disagree about whether the Court should construe "adapted to allow access" in claim 10 of the '023 patent. On one hand, Medtrica contends that the term should be construed as "whereby the pouch is torn along the weakened line." Dkt. # 95

ORDER CONSTRUING CLAIMS - 9

at 24-26.  Cygnus, on the other hand, contends that the term, like the previous three, should be given its plain and ordinary meaning and no construction is necessary.  Dkt. # 101 at 6.  The Court agrees with Cygnus.

Medtrica's proposed construction runs afoul of the doctrine of claim differentiation.  Claim 10 states only that the "pouch includes at least one weakened line in the front and back sidewall panels adapted to allow access to [the] detergent."  '023 patent, col. 7, ll. 59-61.  Claim 11, which depends from claim 10, adds a limitation that "the top seal is adapted to be torn away before cleaning of the endoscope."  Id. col. 8, ll. 1-5.  The Federal Circuit has repeatedly stated that "the presence of a dependent claim that adds a particular limitation raises the presumption that the limitation in question is not found in the independent claim."  E.g. Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 910 (Fed. Cir. 2004).  While this presumption may be overcome, the presumption is not rebutted in this case.  Furthermore, independent claims are presumed to be broader than a dependent claim.  See Am. Calcar, Inc. v. Am. Honda Motor Co., Inc., 651 F.3d 1318, 1337 (Fed. Cir. 2011).

Because claim 10 does not recite any specific means for accessing the detergent inside the pouch, the Court declines to construe "adapted to allow access" to mean "whereby the pouch is torn along the weakened line."  The term is not technical and does not require further construction by the Court in light of its context.

It is so ORDERED.

Dated this 28th day of June, 2013.

                                /s/ Robert S. Lasnik
                                Robert S. Lasnik
                                United States District Judge

ORDER CONSTRUING CLAIMS - 10